IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FIRST STATE INSURANCE GROUP )
)
Petitioner, ) C.A. No. 04 11397 JLT
vs. )
)
DAEHAN FIRE & MARINE INSURANCE COMPANY )
)
Respondent. )
)

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT
OF ITS PETITION TO CONFIRM ARBITRATION AWARD**

Petitioner, First State Insurance Group ("First State"), respectfully submits this memorandum of law in support of its Petition under Section 207 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §207, to confirm a final award dated January 23, 2004 (the "Award") in an arbitration between First State and Respondent, Daehan Fire & Marine Insurance Company ("Daehan"). As set forth below, First State pursued its contractual right to arbitration of its dispute with Daehan; notified Daehan of every step of the process; and, after an evidentiary hearing, obtained the Award in its favor. Although Daehen communicated with First State as to settlement, it elected to remain silent during most of the arbitration process, thereby ignoring its contractual obligations. First State's award should be confirmed by this Court.

### I. FACTUAL BACKGROUND

From April 1, 1975 through March 31, 1977, First State and Daehan were parties to a reinsurance agreement known as the Casualty Facultative Surplus Treaty (the "Treaty") pursuant to which Daehan agreed to reinsure a percentage share of the facultative casualty reinsurance

assumed by First State. In 2001, a dispute arose between First State and Daehan when, without notice or explanation to First State, Daehan ceased making payments due and owing under the Treaty. Pursuant to the language of the arbitration clause contained in the Treaty, the parties were bound to resolve their disputes in arbitration. See Exhibit 1 attached to the Affidavit of Susan E. Grondine ("Grondine Aff."), filed herewith.

On or about March 11, 2003, First State served its arbitration demand on Daehan and the reinsurance intermediary, Marsh Limited, as required by the language of the Treaty. See Grondine Aff., ¶6. Michael Studley of John Hancock Life Insurance Company served as First State's party appointed arbitrator and Robert Miller of Mitsui Sumitomo Marine Insurance Company, elected by First State in accordance with the arbitration clause because Daehan failed to appoint a qualified arbitrator, served as Daehan's arbitrator. See Grondine Aff., ¶¶10 and 11. Richard White of Integrity Insurance Company was chosen by the arbitrators as umpire, and he notified First State and Daehan of the selection. See Grondine Aff., ¶15.

Thereafter, First State advised Daehan and the arbitration panel, comprised of the umpire and two arbitrators (collectively the "Panel"), of the dates that First State was available for an organizational meeting. See Grondine Aff., ¶16. The umpire later confirmed in writing to First State and Daehan that the organizational meeting would be held via telephone on September 22, 2003, and requested that the parties submit their statements of issues by September 16, 2003. See Grondine Aff., ¶19. On September 19, 2003, First State submitted to the Panel and served upon Daehan its Preliminary Statement of Issues. Daehan did not submit a statement of issues. See Grondine Aff., ¶20.

The Panel held the September 22, 2003 organizational meeting by telephone and set a schedule for discovery, pre-hearing submissions, and the hearing. Daehan did not participate in

the organizational meeting. See Grondine Aff., ¶21. First State subsequently served on Daehan a copy of the organizational meeting transcript, Hold Harmless Agreement, and scheduling order. See Grondine Aff., ¶22. Daehan did not respond regarding the Hold Harmless Agreement, nor did it respond to First State's discovery requests or serve any discovery requests on First State. See Grondine Aff., ¶¶23 and 25.

On November 21, 2003, First State submitted its Pre-hearing Brief to the Panel and Daehan. See Grondine Aff., ¶27. Daehan did not submit a brief. See id. The Panel conducted a hearing, via telephone, on November 24, 2003, at which time First State presented evidence and argued its case to the Panel. The Panel actively questioned counsel for First State regarding the merits of its claims against Daehan. Despite notice to Daehan, and efforts by First State and the Panel to urge Daehan to be involved in the arbitration process, Daehan did not participate in the hearing. See Grondine Aff., ¶28.

After due deliberations, on January 23, 2004, the Panel issued the Final Award, ordering, inter alia, that Daehan fulfill its obligations under the Treaty and within ten days: (a) pay First State outstanding balances, plus interest; (b) establish a letter of credit in the amount of current loss reserves; and (c) pay First State's attorneys' fees and all costs of the arbitration, including the Panel's fees and expenses. See Grondine Aff., ¶29. Both First State and Daehan were served with a copy of the Award. See Grondine Aff., ¶¶29 and 30.

Prior to First State's arbitration demand, and continuing through the arbitration and after the Final Award, First State pursued settlement negotiations with Daehan. See Grondine Aff., ¶31.[1] Although Daehan was responsive during settlement discussions, Daehan chose to remain deliberately silent with regard to most of the arbitration process, thereby ignoring its obligations

---

[1] First State has not attached its settlement communications with Daehan to the Affidavit of Susan Grondine because they contain confidential settlement information. If it would assist the Court, First State will make such communications available for an *in camera* inspection.

3

under the Treaty. Indeed, First State has fully compensated Daehan's arbitrator for his services because Daehan has failed to do so. To date, Daehan has failed to comply with the Final Award and has not responded to First State's most recent settlement overtures. For all communications to Daehan, whether relating to the arbitration or settlement, First State used the same contact information. See Grondine Aff., ¶31.

## ARGUMENT

### The Award Should Be Confirmed Pursuant To 9 U.S.C. §207.

The Award should be confirmed under 9 U.S.C. §207, which is part of Congress' enactment into law of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention").[2] Judicial review of an award under the FAA is extremely limited, with a presumption in favor of confirmation. See First State Ins. Co. v. Banco De Seguros Del Esatdo, 254 F.3d 354, 357 (1st Cir. 2001) (judicial review of arbitration award is "among the narrowest known in the law"); Hewlett-Packard v. Berg, 867 F. Supp. 1126, 1130 (D. Mass. 1994) (recognizing that Convention strictly limits scope of review), vacated on other grounds, 61 F.3d 101 (1st Cir. 1995).

Section 207 provides that within three years after an award falling under the Convention is made, any party may seek to confirm it. 9 U.S.C. §207. The award is to be confirmed "unless [the Court] finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." Id. The Convention provides that a Court may refuse to confirm an award only in the event that the party against whom enforcement is sought furnishes proof that: (1) the parties to the agreement were under some incapacity or the agreement was not valid; (2) the party against whom the award is sought to be confirmed was not

---

[2] The Award is subject to the Convention because the arbitration and commercial relationship involved a United States corporation and a foreign corporation with a principal place of business in the Republic of Korea, a signatory to the Convention. See 9 U.S.C. §202; Convention, Art. I, §1.

4

given proper notice of the appointment of the arbitrator or of the arbitration proceedings, or was unable to present its case; (3) the award does not fall within the scope of the submission to arbitration; (4) the composition of the Panel or the arbitration procedure was not in accordance with the agreement of the parties; (5) the award is not yet binding on the parties or has been set aside by competent authority in the country where it was made; or (6) where competent authority in the country where recognition is sought finds that (a) the subject matter of the dispute is not subject to arbitration under the law of that country, or (b) recognition or enforcement of the award would be contrary to that country's public policy. See 9 U.S.C. §207, Convention, Art. V.

No such conditions exist here. First State and Daehan agreed to arbitrate their disputes pursuant to the arbitration clause in the Treaty, and the Panel was selected in compliance with such clause. Daehan received proper notice, via facsimile and/or air delivery, of every step in the process, including the arbitration demand; selection of arbitrators and umpire; the organizational meeting; discovery and briefing schedule; the hearing; and the Final Award.[3]

Although Daehan responded to First State's initial arbitration demand, it remained virtually silent with regard to the remainder of the arbitration process. The Panel held an organizational meeting by telephone. Daehan elected not to participate. First State submitted a Preliminary Statement of Issues and Pre-hearing Brief to the Panel, and served copies on Daehan. Daehan chose not to submit briefs. The Panel conducted a telephonic hearing where testimony and argument were heard and considered. Daehan chose not to participate.

First State was seeking to enforce Daehan's contractual obligations under the Treaty, including payment of outstanding balances and the posting of letters of credit as security. The subject matter of the Award falls squarely within both the submission by First State and the

---

[3] There is no doubt Daehan received adequate notice of all salient information. Indeed, Daehan responded to the arbitration demand and thereafter, responded to First State's inquiries regarding settlement of their disputes. See Grondine Aff., ¶31.

arbitration agreement of the parties. Enforcement of the Award would not be contrary to any cognizable public policy of this country. In fact, public policy is in favor of enforcing arbitration awards. Thus, the Award should be confirmed under the Convention.

## CONCLUSION

For the reasons set forth herein, First State respectfully requests this Court to confirm the Award and direct that judgment be entered against Daehan in favor of First State.

> FIRST STATE INSURANCE GROUP
> By its attorneys,
>
> PRINCE, LOBEL, GLOVSKY & TYE LLP
>
> _____
> Rhonda L. Rittenberg BBO #550498
> Anne-Marie Regan BBO #554317
> John E. Matosky BBO #641661
> 585 Commercial Street
> Boston, MA 02109
> (617) 456-8000
>
> Susan E. Grondine, Esq.
> Horizon Management Group, LLC
> 150 Federal Street
> Boston, MA 02110

Dated: 6/18/04