IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIRST STATE INSURANCE GROUP<br><br>Petitioner,<br>vs.<br><br>DAEHAN FIRE & MARINE INSURANCE COMPANY<br><br>Respondent. | )<br>)<br>) C.A. No.<br>) 04 11397 JLT<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF CERTIFICATION BY SUSAN E. GRONDINE

I, Susan E. Grondine, upon oath do hereby depose and say as follows:

1. I am Senior Vice President and Counsel of Horizon Management Group, LLC. ("Horizon"). Horizon has assumed management responsibility for the run-off of First State Insurance Group ("First State"). As part of my duties and responsibilities, I supervise matters involving disputes over reinsurance recoverables under various reinsurance contracts entered into by First State, including the contract entered into between First State and Daehan Fire & Marine Insurance Company ("Daehan"), the Respondent in this action. I also served as counsel to First State in the arbitration which resulted in the award First State is seeking to confirm in this action. I make this affidavit based on personal knowledge.

2. Between April 1, 1975 and March 31, 1977, First State and Daehan were parties to a reinsurance agreement known as the Casualty Facultative Surplus Treaty (the "Treaty"), pursuant to which Daehan agreed to reinsure a percentage share of the facultative casualty reinsurance assumed by First State. I certify that a true and accurate copy of the Treaty is attached hereto as Exhibit 1.

3. In late 2001, after years of making payments as a reinsurer under the Treaty, Daehan, without notice or explanation, ceased making payments due and owing under the Treaty.

4. The Arbitration clauses in the Treaty provides, in relevant part, as follows:

> If any dispute shall arise between the Company and Reinsurer, either before or after the termination of this Treaty, with reference to the interpretation of this Treaty or the rights of either party with respect to any transaction under this Treaty, the dispute shall be referred to three arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to

appoint an arbitrator within thirty days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate two arbitrators who shall choose the third.

\* \* \*

The arbitrators shall consider this Agreement an honourable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of a majority of the arbitrators shall be final and binding on both the Company and the Reinsurer. The expense of the arbitrators and of the arbitration shall be equally divided between the Company and the Reinsurer. Any such arbitration shall take place in Boston, Massachusetts unless some other location is mutually agreed upon by the parties.

See Exhibit 1, Article XIV.

5. The Intermediary clause in the Treaty provides:

> Intere Intermediaries, Inc., 127 John Street, New York, New York 10038 is hereby recognized as the intermediary by whom this Treaty is negotiated and through whom all communications, notices and remittances relating thereto shall be transmitted to both parties.

See Exhibit 1, Article XIX.

6. On or about March 11, 2003, I sent an arbitration demand with respect to the Treaty, via fax and Federal Express, to I.J. Jeong of Daehan and to Marsh Limited, successor-in-interest to Intere Intermediaries, Inc., the intermediary of record in the Treaty. I certify that true and accurate copies of my March 11, 2003 arbitration demand, fax confirmation and Federal Express receipt are attached hereto as Exhibit 2.

7. In the demand, I advised Daehan that under the terms of the Treaty, it had 30 days to identify its party-appointed arbitrator and if it failed to do so, First State was entitled to appoint Daehan's arbitrator. See Exhibit 2.

8. By letter dated March 25, 2003, I.J. Jeong of Daehan acknowledged First State's arbitration demand and identified as its arbitrator Peter Matthews of Global Reinsurance Consultants Ltd. I certify that a true and accurate copy of the March 25, 2003 fax from I.J. Jeong is attached hereto as Exhibit 3.

9. By letter dated April 1, 2003, I advised Mr. Jeong that Peter Matthews could not serve as an arbitrator under the terms of the Treaty because, among other things, he had done work for First State relating to the accounts at issue. I further advised Mr. Jeong that Daehan was obligated to name a qualified arbitrator by April 11, 2003. I certify that true

and accurate copies of my April 1, 2003 letter and fax confirmation are attached hereto as Exhibit 4.

10. By letter dated April 11, 2003, I advised Mr. Jeong that First State appointed Michael Studley of John Hancock Life Insurance Company as its party-appointed arbitrator. I certify that true and accurate copies of my April 11, 2003 letter and fax confirmation are attached hereto as Exhibit 5.

11. By letter dated April 22, 2003, I advised Mr. Jeong that since Daehan had not yet identified a qualified arbitrator within the time permitted under the Treaty, First State appointed Robert Miller of Mitsui Sumitomo Marine Insurance Company as Daehan's arbitrator. I provided Mr. Jeong with Mr. Miller's contact information and curriculum vitae and suggested that they contact each other so that the arbitration could proceed. I certify that true and accurate copies of my April 22, 2003 letter, fax confirmation and Federal Express receipt are attached hereto as Exhibit 6.

12. By letter dated May 12, 2003 to Mr. Jeong, I confirmed that Messrs. Miller and Studley were authorized to act as arbitrators and recommended that the umpire selection process begin. I certify that true and accurate copies of my May 12, 2003 letter, fax confirmation and Federal Express tracking confirmation are attached hereto as Exhibit 7.

13. By letter dated May 27, 2003, Robert Miller wrote to Mr. Jeong regarding his appointment as Daehan's arbitrator, payment for his services as arbitrator and proceeding with the umpire selection process on Daehan's behalf. I certify that a true and accurate copy of Robert Miller's May 27, 2003 letter is attached hereto as Exhibit 8.

14. By letter dated July 31, 2003, I advised the arbitrators and Mr. Jeong that First State was prepared to proceed with the arbitration and umpire selection. I certify that true and accurate copies of my July 31, 2003 letter and fax confirmation are attached hereto as Exhibit 9.

15. By letter dated August 15, 2003 to Mr. Jeong and me, with copies to the arbitrators, Richard White of Integrity Insurance Company advised that he had been selected by Messrs. Studley and Miller as the umpire in the arbitration. Mr. White further indicated that while the Treaty required the parties to submit their cases within 30 days of the appointment of the umpire, the Panel would consider an extension, if both parties agreed to such. He also sought information from Mr. Jeong regarding the "the individual or organization" that would be representing Daehan in the arbitration and requested contact information for same, indicating the Panel could then move forward with an organizational meeting and ultimate resolution of the case. I certify that a true and accurate copy of Richard White's August 15, 2003 letter is attached hereto as Exhibit 10. I did not receive a response from Daehan to Richard White's August 15, 2003 letter.

16. By letter dated September 5, 2003 to Mr. Jeong and me, with copies to the arbitrators, Mr. White proposed that the organizational meeting take place on September 22, 2003, via conference call, with a court reporter. Mr. White noted that in the event Daehan is

not represented on the call by U.S. counsel, the Panel would remain flexible as to the time of the call given the thirteen hour time difference between Seoul, South Korea and the U.S. East Coast. I certify that a true and accurate copy of Richard White's September 5, 2003 letter is attached hereto as Exhibit 11.

17. By letter dated September 10, 2003 to the Panel and Mr. Jeong, I confirmed that I was available for the September 22, 2003 organizational meeting and would arrange for the court reporter. I certify that true and accurate copies of my September 10, 2003 letter and fax confirmation sheet are attached hereto as Exhibit 12.

18. By letter dated September 16, 2003 to Mr. Jeong, with copies to the Panel, I advised that I would initiate the September 22, 2003 conference call and requested confirmation of Mr. Jeong's telephone number for purposes of the call. I certify that true and accurate copies of my September 16, 2003 letter and fax confirmation sheet are attached hereto as Exhibit 13.

19. By letter dated September 16, 2003 to Mr. Jeong and me, with copies to the arbitrators, Mr. White advised that the organizational meeting would take place on September 22, 2003 and the parties were to provide brief position statements by September 16, 2003. Mr. White enclosed a copy of the proposed agenda for the organizational meeting. I certify that true and accurate copies of Richard White's September 16, 2003 letter and enclosure are attached hereto as Exhibit 14.

20. On or about September 19, 2003, I sent First State's Preliminary Statement of Issues to the Panel and Mr. Jeong. Daehan did not submit a Preliminary Statement.

21. On September 22, 2003, I participated in the telephonic organizational meeting with the members of the Panel and a court reporter. Daehan did not have a representative participate in the call.

22. By letter dated October 2, 2003, I provided Mr. Jeong with a copy of the organizational meeting transcript, a Hold Harmless Agreement and the schedule ordered by the Panel. In addition, I requested that by October 6, 2003, Daehan execute the Hold Harmless Agreement based upon the disclosures by the Panel in the organizational meeting, and confirm its participation in the November 24, 2003 hearing. I certify that true and accurate copies of my October 2, 2003 letter and fax confirmation sheet are attached hereto as Exhibit 15.

23. First State never received a response from Daehan regarding the Hold Harmless Agreement.

24. By letter dated October 10, 2003 to the Panel, with a copy to Mr. Jeong, I advised that since Daehan had not responded regarding the hold Harmless Agreement, First State was signing it on a unilateral basis. I certify that true and accurate copies of my October 10, 2003 letter and fax confirmation sheet, are attached hereto as Exhibit 16.

25. By letter dated October 28, 2003 to the Panel, with a copy to Mr. Jeong, Michael Al-Hussainy, Horizon Reinsurance Collector, at my direction, advised that contrary to the Panel's order that Daehan respond to First State's discovery requests and provide any discovery requests to First State by October 20, 2003, nothing had been received from Daehan. I certify that true and accurate copies of the October 28, 2003 letter and fax confirmation sheet are attached hereto as Exhibit 17.

26. By letter dated November 11, 2003 to the Panel, with a copy to Mr. Jeong, I advised that Daehan had not, as ordered by the Panel, produced any documents in response to First State's document requests. I also requested that the umpire send Daehan a letter urging that it comply with First State's discovery requests and reiterated First State's readiness to proceed with the November 24, 2003 hearing. I certify that true and accurate copies of my November 11, 2003 letter and fax confirmation sheet are attached hereto as Exhibit 18.

27. On November 21, 2003, I submitted First State's Pre-hearing Brief to the Panel and Mr. Jeong. I certify that true and accurate copy of the letter to Mr. White and e-mail to Messrs. Jeong, Studley and Miller transmitting First State's Pre-Hearing Brief, are attached hereto as Exhibit 19. Daehan did not submit a pre-hearing brief.

28. On November 24, 2003, I participated in the hearing, conducted via telephone, on behalf of First State. At the outset of the hearing, I attempted unsuccessfully to reach Mr. Jeong by telephone. During the hearing, I presented documentary evidence and witness testimony and argued First State's case to the Panel. The Panel actively questioned First State's witness and me regarding the merits of First State's claims against Daehan. Daehan did not have a representative participate in the hearing. In the hearing, both Richard White and Robert Miller indicated they had made numerous efforts to urge Daehan to comply with their obligations and participate in the arbitration.

29. On January 23, 2004, the Panel issued its Final Award in First State's favor, requiring, <u>inter alia</u>, that Daehan fulfill its obligations under the Treaty and within ten days: (a) pay First State outstanding balances, plus interest; (b) establish a letter of credit in the amount of current loss reserves; and (c) pay First State's attorneys' fees and all costs of the arbitration, including the Panel's fees and expenses. The January 23, 2004 letter from the umpire to Mr. Jeong and me, with copies to the arbitrators, enclosed the Final Award. I certify that true and accurate copies of Richard White's January 23, 2004 letter and Final Award are attached hereto as Exhibit 20.

30. By letter dated January 30, 2004, Sandra Melvin, Horizon Commutation Analyst, at my direction, sent Daehan a copy of the Final Award. I have not attached hereto a copy of Ms. Melvin's letter as it contains confidential settlement information.

31. Prior to First State's arbitration demand, through the arbitration process and even after the issuance of the Panel's Final Award, I, and others at my direction, communicated with Daehan regarding settlement. In fact, in an effort to facilitate negotiations, First State had even agreed to stay the arbitration proceedings for several months following the

demand. First State withdrew the stay in July 2003 when settlement appeared unlikely. I have not attached hereto copies of such communications because they contain confidential settlement information. Although Daehan responded to First State's arbitration demand and its inquiries regarding settlement, it was virtually silent with regard to the arbitration. First State used the same contact information for all communications to Daehan, whether relating to the arbitration or settlement.

32. As agreed from the first indications that Daehan was electing to not participate in the arbitration, First State has compensated Robert Miller for his services as Daehan's party-appointed arbitrator since Daehan failed to do so.

33. To date, Daehan has not complied with the Panel's Final Award.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 20 DAY OF MAY 2004.

_____
Susan E. Grondine

Signed and Subscribed before me
this ___ day of May, 2004.

_____
Notary Public
My commission expires: